Robert E. McADAMS and wife, Lillian
McAdams

v.

UNITED STATES of America.

HIPPODROME OLDSMOBILE, INC.

v.

UNITED STATES of America.

Civ. A. Nos. 5931, 5932.

United States District Court,
M. D. Tennessee,
Nashville Division.

Sept. 15, 1971.

W. W. Berry, James R. Cheek, III,
Bass, Berry & Sims, Nashville, Tenn.,
for plaintiffs.

Charles H. Anderson, Nashville,
Tenn., Jay R. Weill, Tax Div., Dept. of
Justice, Washington, D. C., for defend-
ant.

## MEMORANDUM

MORTON, District Judge.

These consolidated actions were instituted by plaintiffs to recover the amounts of $5,190.22 and $5,590.61 respectively, paid as income taxes and interest for the calendar years 1965, 1966 and 1967.

Plaintiff, Hippodrome Oldsmobile, Inc., filed its corporate income tax returns for the calendar years 1965, 1966 and 1967 with the District Director of Internal Revenue at Nashville, Tennessee. Upon examination of those returns by an agent of the Internal Revenue Service, certain adjustments were made, resulting in deficiency assessments. These assessments were duly paid, claims for refund were filed, and, upon their disallowance by the Commissioner of Internal Revenue, the instant suit was filed.

For the calendar years 1965, 1966 and 1967, the Internal Revenue Service disallowed deductions claimed by the corporate plaintiff for boat depreciation and operating expenses.

The corporate taxpayer, formerly a Ford distributor, but presently a distributor of General Motors products, first acquired a boat for business entertainment in 1956. This boat was sold in 1960 and the present craft purchased.

The only person who operated these large craft was the corporate president. Not even a member of his family has ever piloted the boat or taken it from its moorings.

In 1956, because of the possibility of some little usage of the craft by the president for his personal pleasure, the company, on recommendation of the company accountant, allocated one-half of any repairs to the boat as an expense of the president. The corporation paid the balance of the repairs and paid all other expenses as reflected by the exhibits. (An analysis of these expenses will be detailed later herein.) From 1956 to and after the taxable years here involved, the corporation entertained its customers and prospective customers on this craft. The company paid no expenses for food or beverage. The president furnished and paid for such food and beverage as was consumed by the guests. No deduction for such expenses was made by either the corporation or the president.

The deductions claimed by the corporation on said craft are, for the taxable years, as follows:

| Item | 1965 | 1966 | 1967 |
|---|---|---|---|
| Depreciation | $1,532.76 | $1,532.76 | $1,532.76 |
| Insurance (boat and boat house) | 625.00 | 625.00 | 700.00 |
| Repairs and Maintenance * | 490.94 | 1,299.02 | 2,026.72 |
| Payment to J. M. Gallagher | –0– | 12.51 | –0– |
| Cedar Creek Boat Club Dues | 125.00 | 250.00 | –0– |
| Restaurant Charges | 40.96 | 102.61 | 70.97 |
| Slip Rental—error | –0– | 144.00 | –0– |
| Total | $2,814.66 | $3,965.90 | $4,330.45 |

Although Nashville, Tennessee is presently surrounded by artificial lakes, in 1956 the lake on which the taxpayer placed its craft was many miles from Nashville. This type of location was continued through the taxable years. Thus, by practice and practical necessity, it is obvious that most boating and entertainment in connection therewith took place on the weekends and holidays during the boating season. Beginning in 1957, the corporation taxpayer, seeking business, initiated the practice which is common in this type of business of entertaining its customers. No question was raised by the Treasury Department as to the deductions claimed by taxpayer until after the enactment of § 274 of the Internal Revenue Code of 1962.

The proof in the cause shows by an overwhelming preponderance of the evidence the following:

(1) A number of automobile agencies in Nashville owned boats for the purpose of entertaining past and future customers to obtain business. This practice

* One-half of the repair item was charged as a personal expense of the president.

was an accepted business procedure in this area.

(2) This was a method of competition for business between automobile agencies.

(3) The accepted method while utilizing these craft with guests thereon was the use of the "soft sell." The representative of the automobile agency would not initiate business conversation but would wait for the guests to mention the product of the host. As a practical matter, there was an unspoken awareness of the reason for the entertainment.

(4) This business tactic was, from an economic standpoint, very successful. In fact, during the taxable years when the corporate taxpayer spent the total sum for the three-year period of slightly more than $11,000, it made direct sales during the same three years to the persons so entertained of $180,988.11, plus $91,232.11 in subsequent years. The amount of sales does not include sales to persons influenced by the guests.

Certainly the expenditures by the corporate taxpayer qualify under 26 U.S.C. § 162 as ordinary and necessary business expenses.

The difficult problem, however, is whether the corporate taxpayer met the requirements of 26 U.S.C. § 274.

An analysis of the records kept by the taxpayer reflects:

(1) The names of guests and the date of their entertainment were compiled at the time of the entertainment in a log.

(2) The claimed deductions, consisting of depreciation, maintenance, fuel, docking fees, and insurance, were listed as paid on a ledger sheet maintained by the taxpayer. No deductions were claimed for the food or beverages furnished to the guests. Thus the items deducted were, in the main, items which from an accounting standpoint were annual accumulations.

(3) The personal use of the craft was practically, if not absolutely, nonexistent. In fact, the president of the company maintained a personally owned boat for the members of his family and their use.

The government contended, as its principal defense, that the substantiation requirement of § 274(d) had not been met by the taxpayer. (Pertinent portions of the regulations issued by the Commissioner of Internal Revenue are appended as Exhibit "A".) The government contends that there is no separate breakdown of amount expended for each guest; furthermore, that adequate records of expenditures were not made.

■ This Court concludes that (omitting the restaurant items to be dealt with later) the expenditures are adequately substantiated. Bills were received and maintained by taxpayer. Checks were issued for their payment and bookkeeping entries in normal accounting procedures were made.

As to the contention that no allocation was made as to each guest, it appears obvious that repairs, depreciation, etc. are annual accounting items. It would be an exercise of futility to require the taxpayer to take the total deductions computation from its ledger sheet, count the number of guests, divide this number into the deduction claimed, and then make an entry in the log book opposite the name of each guest of the result of the division.

Basically an objective reading of the statute and the regulations leaves only one question in the mind of the Court. Did Congress intend to make it impossible for automobile agencies (and similar businesses) to deduct the expenses of an accepted business practice of the "soft sell" through direct entertainment? It seems clear that Congress intended to eliminate deductions of the expense of the large social extravaganzas which prevailed in the decade of the fifties. However, by the very wording of the statute and the legislative history it is evident that legitimate business entertainment is accepted as an important tool in producing taxable income.

Sec. 274 first appeared in the Revenue Act of 1962. The Senate Finance Committee, in reporting favorably the overall bill, commented on § 274 as set out in the version enacted by the House of Representatives, as follows:

"After careful consideration of the proposal, your committee has concluded that deductions for entertainment and traveling expenses and business gifts should be restricted to prevent abuses. The committee agrees that this abuse of the tax law should not be condoned, but on the other hand it does not believe that complete disallowance as recommended by the President is the proper solution to the problem. Rather, your committee is convinced that expenses incurred for valid business purposes should not be discouraged since such expenses serve to increase business income, which in turn produces additional tax revenues for the Treasury. If valid business expenses were to be disallowed as a deduction (particularly expenses associated with selling functions), there might be a substantial loss of revenue where business transactions are discouraged, or where they fail to be consummated.

\*     \*     \*     \*     \*     \*

"Your committee's bill to a considerable degree retains the basic structure of the House bill. However, the effect of the principal provision (the disallowing of a deduction for certain entertainment expenses) has been modified to permit the deduction of expenses for goodwill where a close association is established between the expense and the active conduct of a trade or business.

\*     \*     \*     \*     \*     \*

"To eliminate the harshness resulting from the House report, amendment of the language of the House bill is necessary. Despite amendment of the House bill your committee has made certain that entertainment expense abuses are eliminated. By your committee's amendment an alternative rule is added to the House bill under which expenses for entertainment, amusement, or recreation (with respect to both activities and facilities) also will be deductible to the extent that such expenses are associated with the active conduct of a trade or business. This new language will permit deduction of expenses for entertainment, amusement, or recreation incurred for the creation or maintenance of business goodwill without regard to whether a particular exception applies. However, this new language will apply only if the taxpayer demonstrates a clear business purpose and shows a reasonable expectation of deriving some income or other benefit to his business as a result of the expenditure. If he meets this test, the expenditure will be considered to be associated with the active conduct of his trade or business; otherwise, the expense will be disallowed under your committee's amendment.

\*     \*     \*     \*     \*     \*

"The first part of the provision provides that no deduction is to be allowed for any expense with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, except to the extent that the taxpayer establishes that the expense was directly related to the active conduct of his trade or business, or that the expense was associated with the active conduct of his trade or business. Certain exceptions to this rule are provided, however, for expenses not required to meet the new tests. They are discussed in No. 6 below.

"Entertaining guests at night clubs, country clubs, theaters, football games, and prizefights, and on hunting, fishing, vacation and similar trips are examples of activities that constitute 'entertainment, amusement, and recreation.' In addition, 'entertainment' includes any business expense incurred in the furnishing of food and beverages, a hotel suite, a

vacation cottage, or an automobile either to a customer (present or potential) or to any member of such a customer's family. If deduction is claimed for any expense for 'entertainment, amusement, or recreation' the facts and circumstances of each particular case will determine the extent to which the expenses will be disallowed." S.Rep.No.1881, 87th Cong., 2d Sess. (1962), reprinted in Vol. 2, U.S.Code Cong. & Adm.News, at 3327–30.

This Court concludes that plaintiffs sufficiently satisfied the requirements evidenced in the legislative intent as reported by the Joint Conference Committee in the following language:

"Under the conference agreement the House recedes on Senate amendment No. 29 with an amendment providing that deductions otherwise allowable under chapter 1 of the code shall not be allowed for any item with respect to an entertainment type activity 'unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with,' the active conduct of the taxpayer's trade or business. Under the conference agreement, the Senate recedes on amendment No. 30, and the House recedes on amendment No. 31 with an amendment conforming to the action on amendment No. 29." Conf.Rep.No.2508, 87th Cong., 2d Sess. (1962), reprinted in Vol. 2, U.S.Code Cong. & Adm.News, at 3735.

It appears that Congress did not eliminate deductions for entertainment as a part of the technique known as the "soft sell."

■ Certainly as to the items deducted under the heading "restaurant charges," there has been no compliance with the substantiation requirements of the regulation; therefore, those items are disallowed. As to the other deduc-

tions, the Court finds there has been substantial compliance with the requirements of the statute, 26 U.S.C. § 274, and the regulations issued thereunder.

It is the holding of the Court that except for the restaurant deductions, the corporate taxpayer must prevail.

■ Since the restaurant charges did not enure to the direct or indirect benefit of the individual taxpayers, said items are not taxed against the individual taxpayers as constructive dividends. Thus the individual taxpayer shall prevail.

An order will be prepared by the plaintiffs, submitted to opposing counsel, and upon approval be submitted to the Court.

## EXHIBIT A

[¶ 2294A] § 1.274–1. Disallowance of certain entertainment, gift and travel expenses.—Section 274 disallows in whole, or in part, certain expenditures for entertainment, gifts and travel which would otherwise be allowable under chapter 1 of the Code. The requirements imposed by section 274 are in addition to the requirements for deductibility imposed by other provisions of the Code. If a deduction is claimed for an expenditure for entertainment, gifts, or travel, the taxpayer must first establish that it is otherwise allowable as a deduction under chapter 1 of the Code before the provisions of section 274 become applicable. An expenditure for entertainment, to the extent it is lavish or extravagant, shall not be allowable as a deduction. The taxpayer should then substantiate such an expenditure in accordance with the rules under section 274(d). See § 1.274–5. Section 274 is a disallowance provision exclusively, and does not make deductible any expense which is disallowed under any other provision of the Code. Similarly, section 274 does not affect the includability of an item in, or the excludability of an item from, the gross income of any taxpayer. For specific provisions with respect to the deductibility of (a) expendi-

tures for an activity of a type generally considered to constitute entertainment, amusement, or recreation, and for a facility used in connection with such an activity, see § 1.274–2, (b) expenses for gifts, see § 1.274–3, (c) expenses for travel, see § 1.274–4, (d) expenditures deductible without regard to business activity, see § 1.274–6, and (e) treatment of personal portion of entertainment facility, see § 1.274–7. [Reg. § 1.274–1.]

[¶ 2294B] § 1.274–2.  Disallowance of deductions for certain expenses for entertainment, amusement, or recreation.—(a)  *General rules*—(1)  *Entertainment activity.*  Except as provided in this section, no deduction otherwise allowable under chapter 1 of the Code shall be allowed for any expenditure with respect to entertainment unless the taxpayer establishes—

(i) That the expenditure was directly related to the active conduct of the taxpayer's trade or business, or

(ii) In the case of an expenditure directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that the expenditure was associated with the active conduct of the taxpayer's trade or business.

Such deduction shall not exceed the portion of the expenditure directly related to (or in the case of an expenditure described in subdivision (ii) above, the portion of the expenditure associated with) the active conduct of the taxpayer's trade or business.

(2)  *Entertainment facilities.*  Except as provided in this section, no deduction otherwise allowable under chapter 1 of the Code shall be allowed for any expenditure with respect to a facility used in connection with entertainment unless the taxpayer establishes—

(i) That the facility was used primarily for the furtherance of the taxpayer's trade or business, and

(ii) That the expenditure was directly related to the active conduct of such trade or business.

Such deduction shall not exceed the portion of the expenditure directly related to the active conduct of the taxpayer's trade or business.

(3)  *Cross references.*  For definition of the term "entertainment," see paragraph (b) (1) of this section.  For the disallowance of deductions for the cost of admission to a dinner or program any part of the proceeds of which inures to the use of a political party or political candidate, and cost of admission to an inaugural event or similar event identified with any political party or political candidate, see § 1.276–1.  For rules and definitions with respect to—

(i) "Directly related entertainment", see paragraph (c) of this section,

(ii) "Associated entertainment", see paragraph (d) of this section,

(iii) "Expenditures with respect to entertainment facilities", see paragraph (e) of this section, and

(iv) "Specific exceptions" to the disallowance rules of this section, see paragraph (f) of this section.

(b)  *Definitions*—(1)  *Entertainment defined*—(i)  *In general.*  For purposes of this section, the term "entertainment" means any activity which is of a type generally considered to constitute entertainment, amusement, or recreation, such as entertaining at night clubs, cocktail lounges, theaters, country clubs, golf and athletic clubs, sporting events, and on hunting, fishing, vacation and similar trips, including such activity relating solely to the taxpayer or the taxpayer's family.  The term "entertainment" may include an activity, the cost of which is claimed as a business expense by the taxpayer, which satisfies the personal, living, or family needs of any individual, such as providing food and beverages, a hotel suite, or an automobile to a business customer or

his family. The term "entertainment" does not include activities which, although satisfying personal, living, or family needs of an individual, are clearly not regarded as constituting entertainment, such as (*a*) supper money provided by an employer to his employee working overtime, (*b*) a hotel room maintained by an employer for lodging of his employees while in business travel status, or (*c*) an automobile used in the active conduct of trade or business even though used for routine personal purposes such as commuting to and from work. On the other hand, the providing of a hotel room or an automobile by an employer to his employee who is on vacation would constitute entertainment of the employee.

(ii) *Objective test.* An objective test shall be used to determine whether an activity is of a type generally considered to constitute entertainment. Thus, if an activity is generally considered to be entertainment, it will constitute entertainment for purposes of this section and section 274(a) regardless of whether the expenditure can also be described otherwise, and even though the expenditure relates to the taxpayer alone. This objective test precludes arguments such as that "entertainment" means only entertainment of others or that an expenditure for entertainment should be characterized as an expenditure for advertising or public relations. However, in applying this test the taxpayer's trade or business shall be considered. Thus, although attending a theatrical performance would generally be considered entertainment, it would not be so considered in the case of a professional theater critic, attending in his professional capacity. Similarly, if a manufacturer of dresses conducts a fashion show to introduce his products to a group of store buyers, the show would not be generally considered to constitute entertainment. However, if an appliance distributor conducts a fashion show for the wives of his retailers, the fashion show would be generally considered to constitute entertainment.